We'll hear argument first this morning in Case 12-126, McQuiggin v. Perkins. Mr. Bursch. Thank you, Mr. Chief Justice, and may it please the Court. We're not dealing here with the situation where a prisoner is trying to gather new evidence. AEDPA has a tolling rule to take care of that problem. We're also not dealing with anything that prevents a petitioner from filing, because that's the problem you solved in Holland. What we have here is the question of when a petitioner must file his Federal habeas petition when he has the evidence and there are no barriers to filing. And 2244d1d addresses that exact question. It says within one year. Now, Mr. Perkins asks for a fairly dramatic expansion of Holland. What he wants is equitable abrogation with no diligence, no fault or any other factor. And our primary position is that you should simply apply the plain language of 2244d1d. Ginsburg, I thought that Perkins, didn't he say that you could take into account – I'm looking for the brief – you could take into account delay as a factor in whether his actual innocence gateway case should be heard? Well, he does say that. And we read that as a concession, that sometimes if you wait too long, that can actually trump a claim of actual innocence. And so at a minimum, our alternative position is that you have to act with diligence. That's not quite what he's saying. We've had a miscarriage of justice exception for as long as there's been a habeas statute. We've applied it repeatedly. It's not that it trumps it, but that it puts into doubt the evidence you're claiming, proves your actual innocence. It's not the sort of situation where as reasonable – as due diligence will do, which is to override even an actually innocent person. What he says is it really puts into question the validity of your claim. Justice Sotomayor, it represents the same kind of principle. You've got to act quickly or adverse consequences can happen. But what diligence does, that his rule doesn't do, is it recognizes this compelling, countervailing State interest in having notice and an opportunity to investigate evidence as soon as it's discovered. And the problem here, we don't have any issue at all if it takes 10, 15, 100 years to find new evidence. But once he has that evidence, the burden is on him to come forward so that the State has the opportunity to investigate. You take the case. Kennedy, you have to discuss with us, but just on the small point, he gets – I forget exactly the detail. He gets an affidavit that Jones did it within a year. He has one. Yes. Now, if I were the prisoner, I'd say, you know, this one might not work. Maybe I can get two. And then he gets a second, which makes a certain amount of sense to me, although a substantial period of time elapses. And the same thing happens with the third. It makes sense to me that the prisoner might try to wait for the third. How does that factor into your diligence, assuming we get there? Yes. Justice Kennedy, there's a very simple solution to that problem. If he gets close to the end of his year and he thinks that that next affidavit might be just around the corner, but he doesn't have it yet, all he has to do is file a protective habeas petition with the district court, ask for a stay, and say, I'm still And if he can't find that next affidavit, you litigate it on the merits. And if he does, then he amends his petition and then you hear it. Kennedy, I'm not quite sure that wouldn't mean that you have a whole raft of petitions, protective decisions waiting on the shelves in the district court. That has its own congestion problems in the district court, it seems to me. Two thoughts on that. First, we already see this in the exhaustion area. There are Petitioners who are concerned that notwithstanding statutory tolling for pursuing State remedies, that while they're monkeying around in State court, they might somehow be time barred from bringing their Federal claim. So we see this all the time in the Sixth Circuit, you know, in Michigan in particular, that someone will file their petition and ask for a stay while they exhaust State remedies. So, you know, the pile really isn't going to be any different than it is right now. But the key difference between that scenario and the scenario that Perkins proposes is that when you have him file something, the State's on notice, they have an opportunity to investigate. Now, here we have his last affidavit from the dry-cleaning clerk, and it's 10 years old. So even if Michigan could find that person, there's no way for us to meaningfully cross-examine her and investigate what she really knew or didn't know when she wrote that affidavit 10 years ago. And so with the file and stay, you preserve all of the rights, but yet you give the State the countervailing interest that the statute was meant to protect. And I do not agree with that. Ginsburg. What would it take to show diligence? And didn't he say that he tried to get a lawyer several times and was unsuccessful? Sure. And that's a very practical question that I'd like to address. Most of the habeas Petitioners don't have lawyers, but filing the habeas petition itself is not something that takes great difficulty. Every district court on their website has a place where you click for forms. In the Eastern District of Michigan, when you click that, the very first two entries are habeas petitions for Federal prisoners and State prisoners. And it's a relatively simple form. You check some boxes, say when your conviction was, and you write your claim. And then every Federal district court in the country has full-time pro se staff attorneys who go through these pro se petitions. And if there's a legitimate claim there, then they can work that up for the judge if necessary, and the State will respond. I had some difficulty understanding what the Sixth Circuit was doing. Maybe you can help me with that. The district court, as I understand it, said to the Petitioner, you lose for two reasons. First, you don't really have evidence of actual innocence, not enough anyway. And second, and I can understand that, because the evidence, the most that is suggested by the affidavits is that Jones was a participant in this murder, not that Perkins was not responsible for the murder. But anyway, so you lose for two reasons. First, you don't really have evidence of actual innocence. Second, you weren't diligent. The Sixth Circuit grants a certificate of appealability only on the issue of diligence. And they say diligence doesn't make any difference. Well, where does that leave the Petitioner? He's already lost on the question of whether there's evidence of actual innocence, and there was no appeal on that issue. But we're very confused about that, too. They do say in their opinion that the case is remanded to the district court to determine whether he's got evidence of actual innocence. Now, as you just pointed out, Judge Bell and the district court already made that determination. So maybe they're contemplating an evidentiary hearing or some further investigation, but it is curious because they're not sure. Alito, well, that may be what they're contemplating, but they can't get to the issue of whether the district court adequately addressed the issue of adequate innocence of actual innocence unless that issue is before them. And the issue isn't supposed to be before them unless isn't before them unless a certificate of appealability was issued. And there was no certificate of appealability on that issue. We agree with that 100 percent. So, you know, it's Was that argued to the Sixth Circuit? Did you argue in the Sixth Circuit that even assuming diligence, it wasn't enough here and that's what the district court held? I believe that is the position of the State of Michigan, that because he confessed to his friends both before and after. But it wasn't explicitly made to the Sixth Circuit. I believe that the Sixth Circuit argument did focus on the question of diligence. But, you know, our opinion would be that even if this Court would use, you know, what we call equitable abrogation to kind of wipe away the one-year limitations period, and you would also disagree on diligence, and we don't think you should do that, that you would still reverse because there's nothing left to be done in the case that rises to the very, very high threshold of proving actual innocence based on new evidence. I would like to get back to the statutory language. Where does that leave us? Let's assume. Well, that leaves you with a reversal in any of those three instances. We think that you should address the circuit split, which is the important question of do we apply the limitations period. And to churn to that, what I would like to do is set up an analytical construct. An advisory opinion in your judgment. Oh, no, it wouldn't be an advisory opinion. It would be because you're telling us that there's no proof of actual innocence. So why don't we just say that? I'm saying that's an alternative ground to get to the same place. But the Sixth Circuit's holding was, consistent with some other circuits, that there is no statute of limitations here that you can get by with equitable abrogation, as we call it. It might be its holding, but as Justice Alito just proved, there's no basis for it because it didn't grant ACOA on the substantive merits question. Right. But I think you're wholly within your right to address the merits question, and I would like to churn to that. The analytical construct I want to set up is that we've got three different categories of prisoners who claim actual innocence based on new evidence. In the first category, they use that new evidence only to try to establish innocence with no constitutional claim. And in Herrera, you say no Federal habeas remedy for that. You have to go back to the State courts, executive clemency, prosecutorial discharging of verdicts and things like that. The second category is where you have a prisoner who uses new evidence as a gateway. It's not related to the constitutional claim that they assert, the true sloop gateway. And that's not actually this case either, and you could reserve that question, although I'm happy to talk about that. The case we have here is the third instance where the evidence of actual innocence, the new evidence, is the factual predicate for the claim. And you could not find a provision more on all fours with that category than what Congress did in 2244d1d. And we know that Congress was thinking about actual innocence and sloop. For those of you who are interested in the context, in the legislative debate in 95 and 96 before Oedepa's enactment, we have Senators Feingold and Kennedy and Dodd, among others, talking about how this new statute is going to eliminate claims of actual innocence based on new evidence. In fact, Senator Feingold even mentions the sloop decision. And yet Congress adopts 2244d1d and all the rest of the provisions by a 91 to 8 vote. So Congress had this Court's decision in sloop in the back of its mind. It considered this particular construct, and it said, no, we want a 1-year limitations  I do want to put a point here. Kennedy, your three-way classification, you began with Herrera. Correct. And in a way you're saying that your three loops back into Herrera a bit, because here the innocence is the factual predicate. Right. And in the Herrera case, there is no constitutional claim. So there is no factual predicate. It's just a stand-alone, I'm innocent claim. And this Court has said, appropriately so, that the Federal habeas remedy doesn't cover that. You know, if you think about the remedies you can get from State courts, from prosecutors, from executive clemency, it's a rather big circle. And AEDPA is a much smaller circle that's subsumed in that. And you recognize in Herrera that just because you don't fall within the habeas circle doesn't mean that you can't get relief. In fact, if you look at the examples at the amici brief site on the Respondent's side, in almost every case the final decision is motivated by State action. There's a governor who grants clemency in a couple of cases. There's a State attorney general's office that dismisses charges and others. County prosecutors who do the same. One which the amicus brief characterizes as a habeas grant is actually the Illinois court of appeals in a State proceeding reversing. You know, what the – these are the best examples that they have for why you need an equitable abrogation rule. And yet in the vast majority of those cases, it's the State system that's solving the problem. Now, I do want to go back to what I think is the trickiest question, and that's, Justice Kennedy, the second category of prisoners. Those who are using actual innocence to prove not their underlying constitutional claim, but simply the schloop gateway. And I would respectfully submit that even there, Congress has closed the door with 2244d1d. And the best way to understand that is by looking two sub-provisions earlier in the second and successive petitions category. And this argument that I'm going to make now is a little bit different than the way we did it in the brief, which was, you know, they had it there, they don't have it here. If you look at 2244. Ginsburg. Before you present the argument, you are saying that Congress overruled schloop. Is that the point you're making? The contextual point that I was making was that Congress knew about schloop. It was brought up in the debate that this was essentially changing the schloop rule and allowing someone who claims actual innocence not to present their claim, and Congress swept those objections aside by a 91-to-8 vote.  So that was with respect to successive petitions. No. They were talking in the legislative record just generally about actual innocence and claims of miscarriage of justice. So the textual argument that I want to present involving successive petitions is that when you're looking at 2244, you flow from successive petitions down to the statute of limitations. What that means is that if you have a successive petition, Congress requires you to prove actual innocence and diligence, and you still have to prove that you satisfy the statute of limitations. The Seventh Circuit recognized this in the Escamilla case. So what that means is that even when Congress had a situation where they knew that someone had presented evidence that would satisfy a heightened actual innocence standard, they still required that you satisfy the statute of limitations. Where is that in the text? What are you relying on in the text of 2244? I'm relying on 2244B, which is the successive petition provision. It requires you to first prove that you've got evidence of actual innocence and then also demonstrate that you have diligence. And after you've already gotten through what I'll call the actual innocence statutory gateway, you're still required to satisfy the statute of limitations. If Congress was concerned about Shloop and wanted to make a situation where someone with evidence of actual innocence did not have to comply with the limitations period, they would have put an exception in the successive petition subprovision, and they didn't do that. So you don't have 2244B in your brief, do you? Unfortunately, the text is not there, no. That is unfortunate. Yes. Well, as we explain in the briefs, the fact that you have an actual innocence exception, only two subprovisions earlier, is strong reason to think Congress didn't intend it here, but I'm making a different argument. I'm making a different argument now, which is that Congress considered the instance where you've established a statutory actual innocence gateway in B-2, the successive petition, and still required that it be timely filed, because the State's interest in having notice and an opportunity to investigate is so important. But are you saying that this case is a fortiori from a successive petition? Because this isn't a successive petition. No, this is not. What I'm using the successive petition provision to demonstrate is that, consistent with the legislative history, Congress is demonstrating here in 2244D1D that there is no special actual innocence gateway. Well, you're saying that Congress knows how to write an exception if they want it. But this B does apply to successive petitions, and this is really before that. Well, my point is that if Congress anticipated that actual innocence could be a gateway to circumvent the limitations period, then certainly they would have put that exception in the successive petition, sub B-2, where they said, all right, if you establish actual innocence, we're still going to make you comply with the limitations period. Well, now, your friend on the other side, I think, argues that they put that in expressly because they limited what would be the otherwise applicable miscarriage of justice provision in the question that's before us now. Right. But he was right. What is your answer to that? If he was right about that, then in B you would also see another provision that says, and anyone who satisfies this statutory actual innocence standard doesn't have to comply with the limitations period. And we think that's dispositive. Now, you know, when we've Sotomayor I'm sorry, I don't understand. I mean, there is a presumption that's been longstanding that at least with respect  to exceptions, including the manifest injustice one, it would seem to me that if they intended not to have that apply, they would have done what they did with the successive petition, but they chose not to. Actually, Justice Sotomayor, the history of this statute and of the case law isn't quite that way. And I want to draw a sharp distinction between this case and Holland with respect to history. With respect to equitable tolling, you did have decisions going back to the 1800s recognizing that Federal statutes of limitations in all kinds of contexts, civil and criminal, were subject to equitable tolling. And so then in Irwin, 6 years before AEDPA, you actually create a presumption that if Congress doesn't specifically, you know, exclude equitable tolling. Sotomayor I'm not talking about that presumption. I'm talking about the cause and effect and manifest injustice. So the cause and effect, the manifest injustice, the actual innocence, really starts to develop in 1986, and it comes to fruition in Schlup in 1995, right before AEDPA is passed. Importantly, that exception was always applied to court-created procedural bars, never once to a Federal statute of limitations. And obviously, the separation of powers considerations are quite different when you're talking about a court-created exception to a court-created bar versus a bar that's enforced by Congress itself. And you're creating a world in which this would function as an exception to a State time limit, but not to the AEDPA time limit. Why does that make any sense? That's correct. Because it was the court itself that created the judicial exception to the State filing. And so then or I'm sorry, that created the bar with respect to the State filing. And so then it was completely within the court's power to make an exception to that bar. But again here, the separation of powers considerations militate differently when you're talking about Congress doing the telling. And this Court has acknowledged in Launcher and Dodd and other places that Congress gets to set the parameters of habeas. Kagan But I thought we said in Missouri v. Holland that AEDPA was drafted, was enacted against a background rule which stated that normal equitable principles, such as this one, which had been applied everywhere to all procedural bars, that AEDPA suggested that those would con that AEDPA was against a background that those would continue to apply. Well, it was a very short background, one with no Irwin-like presumption, and one that again had never, ever been applied to a Federal statute of limitations. And Well, why is a Federal statute of limitations any different? Because it's Congress. And Congress is the one that's handcuffing the Court with respect to this open and stated presumption. Yes, but again, it's Congress, but we said in Holland that it's Congress and AEDPA has, has, was, was drafted against this presumption that normal equitable principles would apply. But here's another way to think about it. You know, if you imagine the template that you have on your Microsoft Word when you're doing a document, opinion, whatever, you've got certain stuff that's on the template. And you said in Irwin that when it comes to equitable tolling, you've always got a subprovision Z, call it, in every Federal statute of limitations that appears on that template. And so Congress has to do something affirmatively to strike that out. Because the miscarriage of justice exception had never been applied to any Federal statute of limitations. There wasn't a miscarriage of justice exception sitting on the template. Congress was writing from scratch. But again, why would Congress have thought that there would be any difference in, with respect to a statute of limitations? Well, the biggest reason is because of the State interest in notice and investigating the evidence. When you're talking about the typical Schlup plan. But that applies to States as well. Well, no, there you have stale claims, but you don't have stale evidence. And, you know, we don't have any problem with litigating a claim that could have been litigated earlier and is going to be litigated now. But the world of evidence, the record that supports the claim is already defined and is not going to change. The world we're dealing with in 2244d1d is when new stuff has come forward. And if that new stuff sits in the jailhouse cell for 10, 20, 30 years and we don't have an opportunity to talk to those witnesses, to do counterinvestigation, then not only are we prejudiced with respect to delay and finality and things like that, but we're prejudiced with respect to the merits determination of what that evidence means. And when I talked about my three constructs, you know, this case here where you're using the old evidence to establish the underlying claim, that's really the position where the State is in the worst possible position, because now you've got a, you know, a dry-cleaning clerk affidavit, a 10-year-old affidavit. We can't possibly cross-examine her. And yet not only is that their gateway, that's their substantive merits claim about why there is ineffective assistance of counsel. Why can't you cross-examine her? Is it just because the lapse of time and she won't remember? It will be very difficult. And there are some examples in the amici briefs of the New York case, for example, where witnesses were completely unavailable. They had died or one was out of State and because of mental infirmities could not travel. You know, we all know that as time passes, evidence deteriorates, whether it's because of death or illness or simply forgetfulness. I certainly can't remember what I was doing 10 years ago today. And the affidavit that she submitted was quite short. And that one affidavit is just a microcosm of the problem when you don't come forward immediately with evidence. One other point that I want to make, really on the equities here, because we're spending a lot of time on that. Sotomayor, do you have any idea how many actual innocent claims win on the underlying constitutional issue? Right. The number that win is small. But what this case demonstrates is that the number where it's claimed is very high. In fact, in Michigan, you know, where we deal with procedural default every day, somewhere between a third and a half of our Petitioners claim actual innocence so that they can use SHLUIP to get past the failure to prove cause and prejudice. How many win on the attempt? Well, in the Sixth Circuit a little more than in some other circuits, but generally not very many. Not many. You know, but this case is the perfect example. When you cut the Court loose from the statutory requirement, you end up with what Justice Alito was describing, you know, a situation where no one thinks that Mr. Perkins is actually innocent based on this new evidence. At best, it proves that he had a co-conspirator who helped him commit the murder together, and yet now we've got this Sixth Circuit order which reportedly sends us back to the trial court to do, you know, who knows what. I mean, how do you prove that he's not innocent? Well, a jury already did that. You know, the jury heard all the evidence. They had a presumption of innocence. All the constitutional rules that should have been were applied to that trial, and the jury said he's guilty, and there's not a presumption of innocence anymore. And the equitable point that I wanted to touch on is that this is not just about prejudicing the State's interest. If you allow claims like these to go forward, it also prejudices those who have legitimate claims of actual innocence, the needle in the haystack. And Justices O'Connor and Kennedy in their Herrera concurrence talked about the haystack problem, that when you keep adding hay to that pile, not only is it harder to find the needle, the truly meritorious claim, but at some point the Federal judges just give up and they stop looking. Sotomayor Why is it that the meritorious claim is going to be the one that's going  Meaning that they're not going to be able to prove that they're innocent? Because there's so many. It's important to understand that notwithstanding the limits that Congress was trying to put on these habeas petitions when it enacted UDPA, that we actually have more of an occasional basis today than we did before UDPA was enacted. That's not going to stop the filing. This is just one small rule to cut the haystack down a little bit and make it that much easier to find the needle. And if you can find that occasional needle, and we submit there's not a lot of those, Federal judges are going to be more inclined to look at those. Sotomayor But you would want to keep it out altogether. No. Sotomayor You want an actually, potentially actually innocent person. No, that is not our position, and I want to be really clear about this. First, they've got the year, but if they go past a year, they've got the State system. And what the examples in the amici briefs demonstrate is that Sotomayor But they don't have the Federal system. No, they don't. Sotomayor As a first habeas. But as the Alabama amici brief explains, every State has got a process for curing these claims, no matter how old they are. You've also got the prosecutors who look at these, and they don't want to keep innocent people in jail. And then lastly, you've got clemency, which this Court has always recognized as the remedy for those who assert true, actual innocence, but have no constitutional violation to assert. Unless there are further questions, I would like to reserve the balance of my time. Thank you, counsel. Mr. Riedler. Thank you, Mr. Chief Justice, and may it please the Court. I'd like to start with Justice Kagan's question regarding the important background interpretive principle here that's set out in Holland. There, the Court held that longstanding equitable rules in the habeas context are incorporated into AEDPA, barring a clear command by Congress to the contrary. And the longstanding miscarriage of justice exception has had a well-settled meaning. It has allowed Petitioners who can meet the high standard of showing actual innocence a procedural gateway around a procedural bar to allow them to present their otherwise barred constitutional claims in Federal court. Before you proceed with that, can you address Justice Alito's point that the district court said there's no merit to this, it's not an actual innocence, it's not a valid actual innocence claim, and then the Sixth Circuit sends it back. For the district court to decide something that's already decided, how do you overcome that the Sixth Circuit never reviewed the actual innocence question, the district court did, and said this doesn't make it? That's correct, Justice Ginsburg. And with respect to Justice Alito's question, the report and recommendation from the magistrate denied this petition on statute of limitations grounds solely. It said it was too late and it missed the statutory period. At the district court level, the Court held that the statute of limitations was missed and there was no diligence. The Court believed there was a diligence requirement and said the petition failed for that reason. And then, as Justice Alito noted, the Court added some other language which said it was not a weighing of the evidence, but the Court said that it felt that the evidence was not new in the sense that it was reasonably, potentially reasonably known at the time of trial, which I think is one, was one, the wrong legal standard, but two, was a misinterpretation of schlup, because schlup allows you to consider all the evidence old and new. And I don't think that's what the district court, I think, applied, the wrong legal standard, so it wasn't actually getting to the merits. It didn't sort of set out all the evidence and weigh them.  And so, I think, in the case of the district court, the factually issue was not before the Sixth Circuit appealability. The certificate of appealability was limited on the narrow question of whether there's a diligence requirement. That factually issue was not before the Sixth Circuit. It hasn't been before this Court as well. And what I think this Court should do is what it did in schlup, which is it announced the standard that would apply and then it remanded the case back to the district court for application of the correct standard. Alito, I don't understand that. The district court or you seem to suggest the district court was wrong in saying that there wasn't sufficient evidence for an actual innocence claim. Maybe that's the case. Maybe it was wrong. But if it decided that issue and the issue wasn't appealed, then the issue is settled. And that's the problem that I see. Now, how do you get around that? Fisherman, I don't read the district court as actually getting to the merits. I think it applied a wrong legal rule and said I can't even consider the evidence because it's not new evidence. I think that was an erroneous interpretation. Under schlup, the Court has said many times that the Court can consider all the evidence old and new. And I think that case really turns on the equitable tolling. Did you ask for a certificate of – what other issues did you ask for a certificate of appealability on? Well, our client was acting pro se. What other issues did he ask for a certificate of appealability on? Justice Alito, I don't have that in front of me. I don't recall the full contours of what he requested. The Sixth Circuit granted it on the one narrow issue, whether diligence was a requirement. Counsel, you say on page 17 of your brief that this Court has applied the manifest injustice exception to limits created by Congress. What's your best case for that? Absolutely, Mr. Chief Justice. Those cases are on pages 36 to 38 of the red brief. And I think my friend and I have a disagreement here. It's true that the rule has never been applied to the statute of limitations because there was no statute of limitations before the statute. But the Court has applied the exception to acts of Congress. It did so in Sanders. No, no. What do you mean acts of Congress? Your sentence says applied it to limits created by Congress. I read that to mean statute of limitations, but that's wrong? Mr. Chief Justice, that's incorrect in the sense that there was no Federal statute of limitations before AEDPA. But the Court had applied the miscarriage of justice exception to acts of Congress. So, for instance, in Sanders, the Congress had included in 2244 an ends of justice provision, which seemed to allow the Court to consider the ends of justice when considering whether to hear a success of a petition, which is essentially the equivalent of miscarriage of justice. It did not include that language in 2255, and yet the Court read 2255 as also including the ends of justice requirement, hence the miscarriage of justice, even though the language wasn't there. In Kuhlman the language was not included in 2255, and yet the Court read 2255 as also included in 2254 for Federal petitions. Roberts And said what with respect to time? Mr. Chief Justice, said what with respect to the time limits? Mr. Chief Justice, there was language in both statutes regarding when you could bring a success of petition. The statute that applied to petitions out of State judgment, 2254, included an ends of justice provision, which said the Court could consider the ends of justice in deciding whether to take a success of petition. Roberts So when you said limits, you didn't mean time limits. You meant substantive limits? Mr. Chief Justice, well, no, procedural limits. Procedural limits on procedural limits. Roberts Do you have a case that applies it to time limits, which of course is the question we have here? Mr. Chief Justice, we do. In other words, it would be State time limits, but it's not. Roberts Right. Well, you said limits created by Congress. So just – I mean, I should read limits created by Congress not to mean time limits, but procedural or other limits. Mr. Chief Justice, there have never been any time limits. Roberts Right. I guess that's my – the point of my questioning and your friend's position. There have never been any time limits created by Congress that have been abrogated by a manifest injustice exception. Mr. Chief Justice, I think I can agree with that because there was never a statute of limitations before AEDPA. Roberts Right. And the difference is, in Holland, we're dealing with equitable tolling, which had applied as far back as, you know, whatever the law goes, to limitations. In other words, equitable tolling, which is different from the abrogation, I think, that you're asking for. Well, I don't think so, Mr. Chief Justice. Two responses. First, with respect to the timing issue, the Court had applied the miscarriage of justice exception to abusive petitions. So there's a timing concern invoked there because you're filing a second petition when you could have raised issues earlier, and the Court has said even in that timing context, not a statute of limitations, but it certainly invokes timing concerns that even in that instance, the miscarriage of justice would still overcome the rule. You're asking for what is potentially a very big exception to the 1-year statute of limitations. If you took a poll of all of the prisoners in Michigan, how many of them do you think would say they are actually innocent? Justice Alito, I suspect very few of them could credibly say. Very few would say they are actually innocent? Well, I haven't done that study. I suspect very few of them would say that they are – credibly say that they are actually innocent. Oh, credibly say. But how many would say that they are actually innocent? A lot. And a lot would be able to come up with evidence that's equal to what the petition – what the Respondent here has come up with. Now, do you think it's plausible that Congress, in establishing this new 1-year statute of limitations, because it doesn't want these things to drag on indefinitely, intended to create an exception that broad so that anybody who claims to be actually innocent can at least get over – can get to the point where the court has to decide whether the evidence – has to weigh this evidence of actual innocence to see whether it gets over the threshold? Is that plausible, given what Congress was trying to do in Edward? Absolutely, Justice Alito, for two reasons. First of all, the background presumption, of course, given the established nature of this exception, and back to Mr. Chief Justice's question, while this exception as compared to equitable tolling in the criminal context, I think it's actually more important because it goes to the ultimate equity, and that is innocence. But the background presumption is that Congress includes these foundational equitable rules, of which the miscarriage of justice exception is absolutely one of them, unless Congress expressly says otherwise. Now, Justice Alito, no – no Petitioner is going to want to find themselves in the schluck world where they've missed the statute of limitations. It's not a place they're going to want to be. They're going to absolutely want to file within a year if they can. Sometimes they miss that period, and what the Court has said, in those rare circumstances where you can make a credible, compelling showing of actual innocence, we'll allow you to round the statute of limitations. But no Petitioner wants to be in that circumstance because the schluck standard is so high. Roberts. Just to – I'm not sure that's right. They don't want to definitely file within one year if they don't have anything to say. You know, if it takes a certain amount of time before they either acquire it legitimately or can find somebody or, I don't know, in this case, you know, the – the co-defendant dies, everybody has no reason anymore to, you know, object and pin it on him. I mean, there are a lot of reasons that it's in some of these prisoners' interests to drag things out and then to file if they don't have anything to say within the one year. They need time to either, from your point of view, legitimately develop the evidence or, from your friend's point of view, concoct it. Well, and the statute speaks to that. And I think we do have a disagreement on an interpretation of the statute, but section 2244d1d does speak to the discovery of new evidence which goes to support a claim. I think Congress didn't. And the statute of limitations would run from the discovery of the new evidence, not from. That's correct, Justice Ginsburg, to the extent that the evidence goes to support a claim. Congress included a typical discovery rule. If you discover new evidence that supports the factual underpinnings of your claim, that starts the one-year period over again. But critically, and I think my friend and I have a disagreement here, critically, with respect to that provision, if you find evidence that solely goes to your innocence, that provision is not triggered. Meaning you don't get another year if you find completely exculpatory evidence that shows you're not innocent. You don't necessarily get another year. And there's a hypothetical I can give you. If your underlying claim is a Batson claim, a structural error claim, and you fail to raise it and you miss the one-year limitations period, but then 10 years later you find DNA evidence that completely exonerates your client that was unknown to anyone. So it's not the basis for an IAC claim. It's not the basis for prosecutorial misconduct. In that instance, the statute doesn't start the limitations period over. You're entirely out of luck, which is why Congress had to have meant to include the absolute, the innocence exception for just that kind of case, so that that Petitioner at least has the ability to try to meet the Schlupp standard. Alitoson But that's very odd, because if you have somebody who's actually innocent, then you're saying that person can't get out of prison unless the person happens to have a good constitutional claim that's totally unrelated to the fact that the person is actually innocent. This is very odd, isn't it? I don't think so, Justice Alito, in the sense that all this is is a gateway to allow them their first opportunity to bring a Federal habeas petition. Ordinarily, they're out of luck. But if they brought evidence that is so compelling that shows that there may well have been a miscarriage of justice because this person has shown under the Schlupp standards that they're actually innocent, then in that instance the Court has always said that we're going to allow those claims to be heard, at least in the first instance, by a Federal court for a first petition. Roberts' Your friend responds to that point, I think, by saying that every State allows collateral review in that instance, and that what we're talking about is simply preclusion of the second bite at the apple, or third bite at the apple, I guess, by assumption, in the Federal system. Alitoson Well, Mr. Chief Justice, I'm not sure that's correct to the extent that we've already raised our underlying constitutional claims in State court. Those have been exhausted. So the Michigan rule, as I read it, doesn't allow us to go back to State court and present our constitutional claims again. They've already been adjudicated. Roberts What about the actual innocence claim? Alitoson The innocence evidence, you may be able to pursue that under the State rule, but that is more akin to a free standing. Roberts Is that the most concerning? I thought I understood your friend as saying, and he can correct me if I'm wrong, that every State has an avenue for considering that. Alitoson Well, two responses. One, I think every State has different rules. And so this, the application of the exception has never turned on sort of what the alternative potential State rule is. That wasn't, that was true in House and true in Schlupp where there were State alternatives. But, two, those State alternatives go to freestanding innocence claims, where you're not, you're not alleging that there's an underlying constitutional violation. What you're saying is, similar to Herrera, and that is that I have evidence that shows, setting aside any error with the trial and no errors, I have evidence that shows I'm innocent. That's a completely different concept, and what we're getting at here is the case where you, one, have evidence of innocence and, two, have a constitutionally corrupt trial, or at least an allegation of a constitutionally corrupt trial. Alitoson Well, assuming for the sake of argument that there is this exception, why shouldn't diligence be required? How can it be equitable to allow someone to bring a claim when the person has, involving new evidence, when the person has not been diligent in presenting this new evidence to the court? Fisherman Well, Justice Alito, for decades this Court has never required diligence. In fact, McCleskey has expressly rejected it, and the Court has noted that diligence has not historically been required under the standard because, as the Court said in House and in Calderon, that Congress raised the bar in two places in the statute. But the reason why is because, as Justice O'Connor said in her concurring opinion with, with, in Withrow with Chief Justice Rehnquist, that innocence is the ultimate equity.  And if a Petitioner can come forward and make a credible showing of actual innocence, that standing alone has always been enough to allow a Federal court to at least go ahead and then reach the underlying claim. Ginsburg You have a larger, you have a larger category, you say miscarriage of justice. So one is actual innocence. You say the category is well defined. So what else would fit under this? And we can bring it up very late in the day. Anything else other than actual innocence would be in this category of miscarriage? McCleskey Justice Ginsburg, I think the Court has always treated the phrase miscarriage of justice as synonymous with actual innocence, and that's the one thing it's getting at. It's a narrow exception, difficult to meet, but it's always included cases where you can make a miscarriage of justice. Kennedy A bribed juror is not a miscarriage of justice? McCleskey I'm sorry, Justice Kennedy. Kennedy A juror who's bribed, there's no miscarriage of justice there. McCleskey Well, that would presumably be the basis for a habeas claim. Kennedy Well, we're talking about the meaning of the term miscarriage of justice. It seems to me there are many serious errors that can be described by that general phrase. McCleskey Well, Justice Kennedy, I'm relying on the Court's decades of decisions, many of which you've written in this area, where they've described miscarriage of justice in the habeas setting as the equivalent of incarceration of an innocent person, and that's what the exception is getting at. Breyer So is this boiled down? I mean, you have it when you're a statute of limitations. Now, I guess suppose Hurricane Katrina came along and threw all the documents away for two months. I guess the Court could extend it, couldn't it? McCleskey Well, that could be viewed as an impediment under the statute. There's a statutory provision for it. Breyer I mean, don't they toll it when there's some, when the courthouse burns down? McCleskey It could be also a basis for equitable tolling, correct. Breyer All right. So you want to say, and that's also true when the person is actually innocent. If you can prove that, delay it. Is that what you're saying? McCleskey I'm not sure if I fully understand the question. Breyer Well, you said it says 1 year and it gives four criteria, and the four criteria sometimes are not exclusive. And you want to say yours is one of the times. McCleskey That's true. They're not exclusive. And a ---- Breyer And a different one, you say, is when he's actually innocent. McCleskey That's correct. Breyer All right. If that's correct, then suppose that he purposely has delayed filing this until everybody's dead, so they know they can't prove it anymore. McCleskey Well, then that raises a whole different range of questions. Breyer Well, what is your answer? Can he toll it under those circumstances? McCleskey Well, the any ---- as the Court said in Schlupp, the timing of the submission by the Petitioner can certainly be considered in the Schlupp analysis. Breyer So the answer is, in your view, if he deliberately and without cause delays it for 5 years, his filing, just so everybody will die, you would say, okay, I'm not worried about him. McCleskey Well, Justice Breyer, I would say that he can still attempt to avail himself of the settled miscarriage of justice exception, but the huge problem he's going to have is that he's going to lose. Breyer Does he win or lose? McCleskey He likely ---- he may well lose. Breyer I didn't mean, what do you think? McCleskey He may well lose at the Schlupp stage. Breyer I didn't ask that. I said, what do you think? McCleskey Well, I don't have all the facts. I suspect he's going to lose. Breyer Yes, you do. I made up the hypothetical. McCleskey Well, Justice Breyer, on those facts, I'm going to say he loses at the Schlupp stage, because Schlupp, which is, one, an incredibly high bar to meet, but, two, the Court expressly said at page 322 of the opinion that it can consider the timing of the evidence when it's submitted. So it already takes into account any sort of game-playing that a Petitioner may engage in when they're trying to assert their innocence. Breyer And how long did your ---- Breyer I'm just trying to ---- they admit that if he's diligent, it's okay. McCleskey The State? Breyer Yes. McCleskey Well, the State's asking. Breyer Do you mean if he's diligent? McCleskey We believe he's diligent. The State's asking for a diligence requirement that the Court has never ---- Breyer The State's asking for a diligence requirement. You admit that there's a requirement that you have to not really use this as a sham and device, so we're pretty close. McCleskey Well, I don't ---- there's never been a diligence requirement in this setting, because that's not been the focus. Breyer But there is a sham and deliberate delay requirement. Not a diligence one, but there is a sham. I'm not trying to trick you. What I'm trying to say is maybe we're arguing about something that we could solve. That is, in fact, many of these people don't have lawyers. They don't understand the statute of limitations. They don't understand what diligence might be consistent of looking later. You agree that it shouldn't be a sham, shouldn't do it deliberately. All right. Now, if I'm thinking about that, how would you advise me to write it? McCleskey I think the Court can just build on the principles it's already set forward in Schlupp and other places, and that is that there's never been a diligence requirement in this setting. And Congress, by the way, did not ---- Congress, the intent of Congress was not to include a diligence requirement here, because in two places it did include a diligence requirement with respect to successive petitions or evidentiary hearings. So the congressional intent was not to include diligence. Sotomayor But there has always been a latching's defense until Rule 9a was rescinded. McCleskey That's correct, Justice Sotomayor. Sotomayor All right. So there's been some form, not of due diligence, but some form of check on a prisoner waiting so long that a State can't respond, the Justice Breyer's hypothetical. So he's asking you, I think, to tell us how to write it. So do we write it by saying there's no diligence requirement, but there is a sort of common law latches, although that's a hard argument to make because it was based on 9a until recently, or do we just say it's equity and equity would suggest that if it's contrived, the delay is contrived, that the evidence is suspect and doesn't and shouldn't be credited? McCleskey Absolutely. Two responses. First, just with respect to Rule 9a, Chief Justice Berger, in a concurring opinion to a dissent in Spaulding, said that even a latches rule would give way if there was a colorable showing of actual innocence. With respect to the rule I'd write, I would write the rule that's essentially already in place, and that is that the miscarriage of justice exception does not turn on diligence. It turns on whether you can show innocence. And in attempting to show innocence under Schlupp, this timing, the timing of the submissions is a consideration. So if there's been a delay that somehow hurts the State because a witness has died and it appears to be that that's the fault or that the Petitioner was playing games in that context, I think that's a fair consideration under Schlupp. Roberts So that's established after some kind of evidentiary hearing, the delay, whether he delayed for a particular purpose or not? Berger Well, it depends. If the Petition is filed 3 weeks after the star witness dies, presumably the State will come back in their Petition and note, one, all the evidence that they think goes against the Petitioner's claim, but also they'll note that this happened and the Court could resolve it at that stage, too. Roberts Why did your client wait 5 years after the last affidavit? Berger A number of reasons, Mr. Chief Justice. One, he was looking for counsel to assist him. Two, he continued to look for evidence. Three, he didn't have access to his legal papers. Many of his legal papers were lost in a prison riot and then a flood that occurred at this prison, so he didn't have access to those and had to regain those. For a period of time, he was denied access to the library and to a legal writer. So there were a culmination of reasons why he didn't do this, but I think, too, the critical ones were looking for counsel and trying to develop more evidence. Alito Well, as your adversary says, there's nothing really procedurally complicated about filing a Federal habeas. There are forms, I've read hundreds of them, that have been filed by pro se Petitioners. And there's nothing technical about claiming I'm innocent of this offense. This isn't a legal issue. It's something anybody can understand. I've got my sister's affidavit, I have an affidavit by a third person, I have an affidavit by a person who worked in a dry cleaning shop. It shows that I'm actually innocent. Why doesn't the reason for waiting 5 years to file that? Fisherman Well, Justice Alito, no rational Petitioner is going to want to wait in that period, because if they file within the 1-year period, they go straight to review on their habeas claims and they don't have to worry about any procedural gateway. So no rational Petitioner. Alito I don't understand your answer about why it took him 5 years from the obtaining the last affidavit to the filing of the Federal habeas. You said he couldn't get a lawyer. He really didn't need a lawyer to do this. He didn't have access to a library. This isn't a legal issue. It isn't a complicated legal issue. It's a factual issue that anybody who watches detective shows on TV can understand. Fisherman Well, Justice Alito, you're right. We're not arguing for equitable tolling here in the sense that he could have filed earlier. There wasn't a State impediment that stood in his way the entire period of time. And he should have filed it earlier. And had he filed earlier, then he would have gone straight to consideration of his underlying habeas claims and wouldn't have had to worry about this high hurdle of satisfying the clause. Alito But you think that Congress, which in AEDPA was trying to speed all this up and get rid of the delay and make things simpler, intended to allow that? You could wait 5 years, you could wait 10 years, you could wait 15 years. It doesn't matter. That's what AEDPA was intended to do? Fisherman Well, no, Justice Alito, you're correct that AEDPA was intended to delay or to end delay when possible. But as the Court said in Holland, AEDPA was not meant to end every delay at all costs. And I think this is exactly the situation they had in mind. In Calderon, the Court recognized that the miscarriage of justice exception is consistent with AEDPA because it arises so rarely that in the vast majority of cases the finality and comity concerns that the State has are honored because there's no additional proceeding, the Petitioner will not meet the high Schlupp standard and the case will end. But in the rare case where a Petitioner can satisfy Schlupp, the Court has always said that the courthouse doors in that circumstance will be open to review of your first Federal petition. Ginsburg The Second Circuit, when it had a similar case, the Second Circuit itself said that actual innocence is rare. This is such a case, this is a case where the alibi that he had was established by forensic evidence, airtight, he was someplace else. The Second Circuit didn't send it to the district court to decide the actual innocence. It decided that itself and then said, district court, now you deal with the questions that the Petitioner is raising, the constitutional questions. But the Sixth Circuit just seemed to be, it didn't matter whether the actual innocence claim had any solid basis. Then they sent it back to the district court. It shouldn't, if there is an actual innocence gateway, shouldn't the court of appeals determine that before it returns the case to the district court? I think ordinarily, yes. The Sixth Circuit said here that there was a gateway and it was remained in the case back to the district court. Ginsburg. But it didn't find out anything about whether this was, this claim was a good one. That's correct. That's correct, Your Honor. And I'm still puzzled about what happens next. The case goes back to the district court and the district court is told diligence doesn't matter. The district court said, yes, but I thought that the claim was worthless. Well, it's correct that the case should be remanded back to the district court, just like this case, but just like the court did in Schlupp, where it announced the standard and remanded it back to the district court for application. But here I disagree with that reading of the underlying opinion in that the court doesn't set out and sort of weighing all the evidence and saying here's what I find in favor of the Petitioner and here's what I find in favor of the State. What the district court said is that it said the timing of the evidence was somehow a problem because the information was known at trial, which I think is, again, wrong for two reasons.  One, of course, was that his attorney was told about some of these things but didn't actually assert them or didn't interview one of the key witnesses. One of the affiants was on the prosecution's witness list, and my client's lawyer didn't even interview that person, let alone call them. And then the court — I think the court, the trial court misunderstood Schlupp, because Schlupp allows you to consider all of the evidence, old and new, make appropriate credibility determinations, consider the timing of the evidence, and determine whether that standard has been met. And I think that's what should happen here for the first time, in our view. And there was a question earlier with respect to how often the Schlupp standard is met. In response to the reply brief, we did a search of the circuit courts, and we found since Schlupp was decided, eight circuits that have upheld or have found that Schlupp was satisfied. If you add in House, then that adds nine appellate cases where Schlupp was satisfied. So it's a narrow range of cases, extremely difficult to meet, but we— Roberts Well, but I mean, the whole question, and your friend made the point, the question is how many are filed, and how many cases does the claim rise, not how few times it's upheld. Fisher Sure. Mr. Chief Justice, I suspect no matter the rules, there will always be filings by Petitioners, and many of those may be frivolous. But as the Court has said in Panetti and other cases, you know, unmeritorious petitions can be dismissed at the earliest course, and it's consistent with Habeas Rule 4. That's what should happen in this instance, too. But it's often, it's often— Roberts Well, how do you know which of these are meritorious and which aren't? Is this a meritorious? I assume you think this is a meritorious one. Fisher We do, Mr. Chief Justice. Roberts And yet your friend says nobody can reasonably think this person is innocent. Maybe he has constitutional claims, but if you look at the evidence, is this something at the preliminary stage you look at and say, oh, this guy is clearly innocent, this goes forward, or is it one that you can cast aside? Fisher I don't think it's one you can cast aside. I think you have to give this more development. And by the way, he was proceeding pro se. I think when he's, when the case is remanded with the assistance of counsel, he can present, better present the evidence and present some other things to make the showing stronger. And I think we can meet the Schlepp standard. If there are no further questions, we'd ask that the Sixth Circuit be affirmed. Roberts Thank you, counsel. Mr. Bursch, you have four minutes remaining. Bursch Three brief points about Holland and some closing thoughts about diligence. With respect to Holland, I want to note, first of all, that there you were dealing with legislative silence. Everyone agreed that Congress had not said anything about equitable tolling. And as I explained earlier, when you consider the three categories of defendants who claim actual innocence based on new evidence, this situation here, where the new evidence relates to the actual predicate of the constitutional claim asserted, that's where Congress most clearly meant to have the limitations period apply. So it's very different. With respect to equitable tolling applying to acts of Congress, everyone recognizes that. Mr. Chief Justice, you note that this has never been applied to limitations. I actually have to take issue with my friend's statement that Sanders and Kuhlman somehow took a different tack, because in both of those cases, what Congress did is it left it to the district court judge's discretion to do or not do something. And all this Court said was, well, if they've got discretion, then they can still have an equitable exception. So even in those cases, this miscarriage of justice exception has never, ever been used to override a congressional act. The last thing is that in equitable tolling, you are dealing with the fault of the petitioner. If Hurricane Katrina or something else happened, that wasn't their fault. And here, it's entirely within the petitioner's control. All they have to do is print the form, check the boxes, attach the evidence, and then file the claim. And they have an unlimited time to find evidence, and then one year after that to file. Now, with respect to diligence. Kagan, you had suggested earlier some way out of this puzzle about why Congress would have put the actual innocence exception into the second successive petition provision and not had one for first petitions. Yes. So that seems really quite odd to me. I mean, a number of my colleagues have said, well, can we really believe that Congress contemplated this? But, I mean, don't we have evidence that Congress contemplated it in the second and successive context, a slightly tighter version? Wouldn't it be quite odd to say that Congress contemplated an actual innocence exception when you're on your second petition, but borrowed it when you're on your first? What sense would that make? Let me explain that, and I'm glad you raised that, because, you know, besides the legislative history that informs what we're looking at here, what they did in 2244 D.1.D. is they made it broader. They said even if you don't claim innocence, if you're coming forward with new evidence, we want the Court to hear that constitutional claim if you bring it within one year. The reason they didn't mention it there is because it would have made the provision narrower and they didn't want to do that. Then they ratcheted it up with respect to successive petitions, making you pass through the successive petition actual innocence gateway, and then comply with the limitations period. So that's the explanation consistent with the legislative history. Kagan. Well, I guess I'm just not sure I understand that. I mean, they could have added a separate provision, just saying there's an actual innocence exception, or there's not consistent with the way they did it in the second and successive petition. Right. They could have, but again, that would have limited D.1.D. Well, it didn't have to. Why would it necessarily have limited D.1.D.? Well, if they said there's an exception for those who claim actual innocence, the implication is for those who don't claim actual innocence, you're out of luck. Well, you just make the converse clear. Well, if we could rewrite congressional statutes with hindsight, you know, maybe we could draft a perfect statute. All I'm suggesting is that your interpretation of the statute creates a glaring anomaly, that people would be out of court on the first petition, then they could turn around on their second petition, which is usually disfavored, and get an actual innocence exception. No, that's not the way that we interpret this at all. Under either provision, you're stuck with D.1.D. You've got to file within a year. All that the successive petition adds to it is that you do have a statutory actual innocence gateway to pass through first that you don't have on your first petition. That's our position. I do want to close with some thoughts about diligence. You know, looking for counsel, we've talked about how simple it is to file these things. The papers lost in the prison riot and the access to the library are related. And it's because Defendant Perkins incited the prison riot. So he's hardly in an equitable position of claiming any tolling benefit from that. And with respect to the rule, Justice Breyer, we can't have a diligence rule, if you go to that point, based on intent, because the interest that's being vindicated here is not the purpose of the Petitioner in D.1.D. Breyer, what do you think about the words discovered and exercise of due diligence? You know, you could manipulate those words so as to deal with the circumstance of the, say, below average IQ person who doesn't have a lawyer, who isn't certain about what to do, and what counts as diligence and discovery in that case. And is that – are you objecting to that? You object to that. What do you think?  Burschel.           Burschel. Burschel. Burschel. Burschel. Burschel. Burschel. Burschel. And so there's a whole range of context when we're dealing with new evidence that relates to the actual constitutional claim. And they're asking for not equitable tolling, but extraordinarily tolling that you should reject. Thank you, counsel. The case is submitted.